# EXHIBIT 3

At an IAS Term, Part 6 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 28th day of August, 2025.

P R E S E N T:

HON. JOY F. CAMPANELLI,

                                    Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ECP PROPERTY II, LLC,

                            Plaintiff,

      - against -                                  Index No. 502651/2022

JOSEPH S. NORTON, 29 KERMIT PLACE, LLC, 31 KERMIT OWNER LLC, 35 KERMIT PLACE, LLC, 771 HOPKINSON BOYLAND LLC, TAMEKA NORTON, NOEL NORTON, TAMIR NORTON, CARLOTTA NORTON, SARATOGA LIVONIA, LLC, SMART KIDS R US, INC., JEHOVAH-JIREH EL SHADDAI, LLC and DOE, INC. 1 through 10 and JOHN AND/OR JANE DOES 1 through 10,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| The following e-filed papers read herein: | NYSCEF Doc Nos. |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) | 316-333   335-370 |
| Opposing Memorandum of Law | 379 |
| Reply Affidavits (Affirmations) | 383-385   386-388 |

Upon the foregoing papers in this fraudulent conveyance action, plaintiff ECP Property II, LLC (ECP or Plaintiff) moves (in motion sequence [mot. seq.] seven) for an order: (1) granting it summary judgment, pursuant to CPLR 3212, on its First Cause of Action for fraudulent conveyance against defendant 35 Kermit Place LLC (35 Kermit

Place), and (2) awarding it attorneys' fees, costs and disbursements (NYSCEF Doc No. 316).[1]

ECP separately moves (in mot. seq. eight) for an order: (1) granting it summary judgment, pursuant to CPLR 3212 and DCL § 276, on its Third Cause of Action for fraudulent conveyance against defendants Smart Kids R Us, Inc. (Smart Kids), Tameka Norton and Tamir Norton; (2) granting it summary judgment, pursuant to CPLR 3212, on its sixth cause of action for civil conspiracy against all defendants; and (3) awarding it attorneys' fees, costs and disbursements (NYSCEF Doc No. 335).[2]

## Background

On January 27, 2022, ECP commenced this fraudulent conveyance action. On October 2, 2023, after the court granted leave to amend, ECP e-filed an amended complaint (NYSCEF Doc No. 325). The amended complaint alleges that "[t]his case involves a conspiracy orchestrated by [former] Defendant Joseph Norton to avoid payment of a valid judgment in favor of ECP and against Riverrock Nehemiah Realty LLC ('Riverrock'), Guytech Management Services, Inc. ('Guytech'), and Joseph Norton (collectively with Riverrock and Guytech, the 'Judgment Debtors')" (*id.* at ¶ 1). Essentially, ECP alleges that there were several intra-family and fake business transactions by defendants to avoid payment of ECP's deficiency judgment against the Judgment Debtors.

---

[1] ECP withdrew that portion of mot. seq. seven for a default judgment (NYSCEF Doc No. 392).
[2] ECP withdrew that portion of mot. seq. eight for a default judgment (NYSCEF Doc No. 393).

On July 14, 2025, *more than a year after* ECP e-filed its amended complaint, defendants 29 Kermit Place, LLC, 31 Kermit Owner LLC, 35 Kermit Place, 771 Hopkinson Boyland LLC, Smart Kids, Jehovah-Jireh Properties LLC, Tameka Norton, Noel Norton, Tamir Norton, Carlotta Norton and Saratoga Livonia LLC collectively e-filed a late answer verified by counsel, in which they denied the material allegations in the amended complaint and asserted affirmative defenses (NYSCEF Doc No. 378).

After ECP sought a default judgment and defendants moved (in mot. seq. nine) for an extension of time within which to answer, defendants' answer was accepted on consent (NYSCEF Doc Nos. 392 and 393).

### *ECP's Summary Judgment Motion*
### *Against Defendant 35 Kermit Place*

Meanwhile, on October 9, 2024, ECP moved for "summary judgment on ECP's First Cause of Action in favor of ECP and against 35 Kermit Place in the amount of $1,058,746.70, plus interest from July 6, 2017, for its receipt of the Funds from Riverrock" (NYSCEF Doc No. 316 at ¶ 1 [b]). ECP submits an affidavit from Nathan Cann (Cann), who attests that "I have firsthand personal knowledge of the underlying facts as set forth in this affidavit by virtue of my employment with ECP, which among other things requires me to manage ECP's loans . . ." (NYSCEF Doc No. 328 at ¶ 1).

Cann attests that 35 Kermit Place was the recipient of more than $1 million from Riverrock, against whom ECP has a $988,328.90 judgment with interest from September 21, 2016 (NYSCEF Doc No. 329), and "[t]his transfer violated DCL §§ 273-a and 276, and

3

it was made with the express purpose of preventing ECP from collecting the Judgment . . ." (*id.* at ¶ 2). Cann explains that ECP is a judgment creditor of 35 Kermit Place and the other Judgment Debtors by virtue of a $988,328.90 deficiency judgment entered against them, jointly and severally, on July 6, 2017, in the foreclosure action, *ECP Property II LLC v Riverrock Nehemiah Realty LLC, et al.*, Kings County index No. 3763/12 (*id.* at ¶¶ 4-5). According to Cann, "[a]fter significant litigation in the Foreclosure Action, certain real property owned by Riverrock was foreclosed upon and sold on December 17, 2015, resulting in a significant deficiency remaining due and owing to ECP" (*id.*).

Cann explains that, in April 2016, before ESP obtained a deficiency judgment against the Judgment Debtors in the foreclosure action, ESP and defendants engaged in negotiations, during which Joseph Norton requested that TD Bank draft a letter confirming to ECP that he and Riverrock held $1,534,836.90 in available funds in their TD Bank account to purchase the property and avoid entry of a deficiency judgment (*id.* at ¶¶ 7-8).

Cann attests that before ECP was provided with the TD Bank letter on September 18, 2016, defendants had already transferred the funds in Riverrock's TD Bank account ending in 2053 to 35 Kermit Place (*id.* at ¶¶ 9-10). Specifically, Cann attests that "[o]n April 7, 2016, Riverrock issued a check to Joseph Norton . . . in the amount of $100,000.00" which "was deposited in an account at the Guyana Bank of Trade and Industry Limited in Guyana, a country in South America" (*id.* at ¶ 16). Cann further attests that "[o]n April 15, 2016, Riverrock transferred $1,534,836.90 . . . to a TD Bank account owned by 35 Kermit Place" (*id.* at ¶ 18). ECP submits a copy of the TD Bank account statement for the

4

Riverrock account reflecting that on September 18, 2016, when ECP was provided with the TD Bank letter advising that there was more than $1 million in the account, the balance in Riverrock's account was only $1,600 (*id.* at ¶ 18; *see also* NYSCEF Doc No. 333).

Cann asserts that "[t]he 35 Kermit Place Transfer was orchestrated by non-party Joseph Norton in an attempt to conceal assets from ECP and hinder, delay, or deny enforcement of the Judgment to be entered in the Foreclosure Action" (NYSCEF Doc No. 328 at ¶ 20). Cann attests that the transfer to 35 Kermit Place "occurred after the foreclosure sale of the Property, but before entry of the Judgment" and "[a]t all times, 35 Kermit Place was aware of the deficiency due and owing to ECP after the foreclosure sale" (*id.* at ¶ 22). Cann attests that "ECP did not learn until years later, through post-judgment discovery . . . that the Funds had been transferred in their entirety to 35 Kermit Place, and subsequently out of the country . . ." (*id.* at ¶ 23).

***ECP's Summary Judgment Motion Against
Defendants Smart Kids, Tameka Norton and Tamir Norton***

On November 4, 2024, ECP moved for summary judgment on its third cause of action for fraudulent conveyance against defendants Smart Kids, Tameka Norton and Tamir Norton and on its sixth cause of action for civil conspiracy against all defendants (NYSCEF Doc No. 335).

ECP submits another affidavit from Cann, who attests that "[a]s a result of their management control of the Corporate Defendants, the Individual Defendants and non-party Thema Norton, acted in concert to prevent ECP from collecting the Judgment" and they

5

"used their ownership and management positions with Riverrock and the Corporate Defendants to retain, transfer, and conceal assets from ECP . . ." (NYSCEF Doc No. 351 at ¶¶ 14-15). Cann attests (*id.* at ¶¶ 19-20) that in order to obtain the TD Bank letter, the Corporate Defendants, at the direction of the individual defendants and non-party Thema Norton, made the following transfers into Riverrock's TD Bank account, all of which ECP documented: (1) an electronic transfer of $430,000 on December 15, 2015, from 35 Kermit Place's TD Bank account to the Riverrock Account (NYSCEF Doc No. 357); (2) an electronic transfer of $340,000 on December 15, 2015, from 29 Kermit Place's TD Bank account to the Riverrock Account (NYSCEF Doc No. 358); (3) an electronic transfer of $310,000 on December 15, 2015, from 771 Hopkinson Boyland's TD Bank account to the Riverrock Account (NYSCEF Doc No. 359); (4) an electronic transfer of $20,000 on December 15, 2015, from 31 Kermit Owner's TD Bank account to the Riverrock Account (NYSCEF Doc No. 360); and (5) an electronic transfer of $309,000 on April 11, 2016, from 771 Hopkinson Boyland's TD Bank account to the Riverrock Account (NYSCEF Doc No. 361).

Cann attests that on May 6, 2016, after Riverrock transferred $1,534,836.90 to 35 Kermit Place's account, 35 Kermit Place attempted to transfer $1,400,000.00 of those funds to an account at Citizens Bank Guyana Inc. in Guyana by wire transfer to "Joseph S Norton F.C.A. Acct # *****0207" (NYSCEF Doc No. 351 at ¶ 28 and NYSCEF Doc No. 364). However, on May 26, 2016, the Citizens Bank Guyana transfer was rejected and returned to 35 Kermit Place (NYSCEF Doc No. 251 at ¶ 29 and NYSCEF Doc No. 365).

Subsequently, on June 6, 2016, $1,450,000.00 was debited from 35 Kermit Place's TD Bank account using a Cash Withdrawal Slip (NYSCEF Doc No. 251 at ¶ 30 and NYSCEF Doc No. 366). Cann attests that on June 18, 2016, $1,450,000.00, the precise amount debited from 35 Kermit Place's account, was deposited into the TD Bank account held by Smart Kids with a Cash Deposit Slip signed by Carlotta Norton (NYSCEF Doc No. 251 at ¶ 32 and NYSCEF Doc No. 367). Cann asserts that on July 22, 2016: (1) $500,000.00 was withdrawn from the Smart Kids' TD Bank account using a Cash Withdrawal Slip executed by Carlotta Norton, and (2) Carlotta Norton purchased a bank check from TD Bank in the amount of $250,000.00 to Tameeka Norton and a $250,000.00 bank check to Thema Norton (NYSCEF Doc No. 251 at ¶¶ 32 and 35 and NYSCEF Doc No. 368). Cann asserts that defendants used cash deposit and withdrawal slips for these transfers to conceal the source and recipients of the funds and to delay and hinder ECP from collecting its deficiency judgment (NYSCEF Doc No. 251 at ¶¶ 32 and 34).

Cann attests that "[o]n January 5, 2017, $550,000.00 was withdrawn from the TD Bank account owned by Smart Kids by Cash Withdrawal Slip executed by Carlotta Norton and used to purchase a TD Bank Check payable to Tamir Norton . . ." and "Tamir Norton endorsed the TD Bank Check . . . and deposited the funds into a Capital One, N.A. bank account" (*id.* at ¶ 38 and NYSCEF Doc No. 369). Cann attests that "[o]n January 9, 2017, $402,100.00 was withdrawn from the TD Bank account owned by Smart Kids by Cash Withdrawal Slip executed by Carlotta Norton" and "TD Bank issued check payable to Jehovah-Jireh in the amount of $402,100.00" (*id* at ¶ 40). Cann attests that "[o]n November

28, 2017, $250,000.00 was withdrawn from the TD Bank account owned by Smart Kids by Cash Withdrawal Slip executed by Carlotta Norton" and "TD Bank issued another check payable to Jehovah-Jireh in the amount of $250,000" (*id.* at ¶ 41 and NYSCEF Doc No. 370).

Cann asserts that "[e]ach of the Transfers occurred after the foreclosure sale of the Property, but before entry of the [deficiency] Judgment[,]" "[a]t all times, the Defaulting Defendants were aware of the deficiency due and owing to ECP after the foreclosure sale" and "[t]he Transfers were made in furtherance of the Defaulting Defendants' scheme to hide their assets and defraud ECP" (*id.* at ¶¶ 45-46). Cann further asserts that "[t]he Fraudulent Transfer Scheme was orchestrated in furtherance of the corrupt agreement among Defendants Tameka Norton, Noel Norton, Tamir Norton, Carlotta Norton, and non-party Thema Norton . . ." (*id.* at ¶ 49).

### *Defendants' Opposition*

Defendants, in opposition to mot. seq. eight only,[3] submit a memorandum of law asserting, in the most conclusory way, that:

> "the summary judgment relief must be denied because: (1) genuine issues of material fact exist regarding the alleged fraudulent conveyances, intent to defraud, fair consideration, insolvency, and other elements of Plaintiff's claims; (2) Plaintiff's claims are barred by the statute of limitations; (3) Plaintiff lacks standing to pursue these claims, particularly those imputed to Joseph Norton, which belong exclusively to his bankruptcy trustee; (4) Plaintiff fails to meet the stringent requirements for piercing the corporate veil to access corporate

---

[3] Defendants failed to submit any opposition to mot. seq. seven.

assets; and (5) corporate assets are not subject to claims against individual shareholders absent exceptional circumstances not present here" (*id.* at 6).

Without submitting any fact affidavits, defendants argue in their memorandum of law that the allegedly fraudulent transfers were "legitimate business transactions with fair consideration and no intent to hinder Plaintiff" (*id.* at 2 and 7-8). Defendants further argue that "genuine issues of material fact permeate every element of the claims, particularly the fact-intensive questions of fraudulent intent under DCL § 276 and the existence of a corrupt agreement or overt acts for civil conspiracy" and "Plaintiff's reliance on 'badges of fraud' (e.g., familial transfers and cash transactions) does not establish intent as a matter of law, as such badges merely create rebuttable inferences requiring trial" (*id.* at 7 and 13). Defendants claim that "Plaintiff's affidavits rely on speculative inferences from bank records, which do not prove undisputed facts" (*id.* at 8; *see also* 9-10).

***ECP's Reply***

ECP, in reply, submits two identical "omnibus" attorney affirmations noting that defendants failed to oppose mot. seq. seven and defendants' memorandum of law only addressed mot seq. eight (NYSCEF Doc Nos. 383 at ¶¶ 2 and 4 and 386 at ¶¶ 2 and 4).

ECP argues that "Smart Kids, Tamir Norton, and Tameka Norton should all be held liable on ECP's Third Cause of Action as subsequent transferees of the fraudulently conveyed Funds" because after the June 18, 2016 transfer of funds from Riverrock to Smart Kids, "each subsequent transfer was executed by members of the Norton family or involved entities controlled by the Norton family" (*id.* at ¶ 9). ECP contends that "[a]s further

evidence of the Defendants' intent to hinder, delay, and defraud ECP, Carlotta Norton used multiple cash withdrawal slips and purchased multiple bank checks, which were directed to members of her family, all with the Funds that were meant to pay ECP" (*id.* at ¶ 10). ECP asserts that "after negotiating with ECP to settle the [foreclosure] case and avoid entry of the underlying deficiency Judgment . . . Defendants transferred the Funds not fewer than 11 times to Smart Kids, Tameka Norton, Thema Norton, Tamir Norton, and Jehovah-Jireh" with "intent to hinder, delay or defraud its creditor ECP" (*id.* at ¶ 23).

## Discussion

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2d Dept 2005]; *see also Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept 2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require

10

a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493 [2d Dept 1989]).

"Pursuant to the former version of Debtor and Creditor Law § 276, which was applicable at all relevant times here, '[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors'" (*Argyle Funds SPC, Inc. v Barrick*, 226 AD3d 673, 675 [2d Dept 2024]). "When considering whether a conveyance was made with actual intent to defraud, courts will consider 'badges of fraud,' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent" (*id.* [internal quotation marks omitted]). "The common 'badges of fraud' include 'a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance'" (*Goldenberg v Friedman*, 191 AD3d 641, 643-644 [2d Dept 2021], quoting *MFS/Sun Life Trust–High Yield Series v Van Dusen Airport Servs. Co.,* 910 F. Supp 913, 935 [SDNY 1995]). "The burden of proof to establish actual fraud under Debtor and Creditor Law [former] § 276 is upon the creditor who seeks to have the conveyance set aside, and the standard for such proof is clear and convincing evidence" (*Pine Valley Ctr., LLC v Jacobs*, 237 AD3d 1115, 1117 [2d Dept 2025]).

Here, ECP has made out a prima facie case entitling it to summary judgment on its First and Third Causes of Action for fraudulent conveyance asserted against 35 Kermit Place, Smart Kids, Tameka Norton and Tamir Norton based on Cann's undisputed affidavit testimony and the incontrovertible documentary evidence and financial records produced by ECP. ECP's uncontroverted submissions demonstrated the existence of badges of fraud, including a close familial relationship between the defendants, the Nortons, who engaged in a series of financial transactions to conceal Riverrock's funds to prevent ECP from satisfying its deficiency Judgment in the foreclosure action. Defendants, in contrast, failed to submit any admissible evidence to oppose ECP's summary judgment motions.

Because ECP is entitled to summary judgment on the issue of liability on its causes of action under DCL § 276, ECP is entitled to an award of reasonable attorneys' fees, pursuant to DCL § 276-a (*see Goldenberg v Friedman*, 191 AD3d at 644).

Finally, regarding the Sixth Cause of Action asserted against all Defendants for civil conspiracy, "[a]lthough New York does not recognize civil conspiracy to commit a tort . . . as an independent cause of action, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme" (*JP Morgan Chase Bank, N.A. v Hall*, 122 AD3d 576, 580 [2d Dept 2014]). In order to recover damages for civil conspiracy, "the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement" (*Swartz v Swartz*, 145 AD3d 818, 825-826 [2d Dept 2016]). ECP sufficiently

established that the Defendants, working together in agreement towards a common goal, fraudulently conveyed over $1 million from Riverrock in a series of transactions to avoid paying ECP the deficiency judgment. Accordingly, it is hereby

**ORDERED** that ECP's motion (mot. seq. seven) is granted without opposition to the extent that summary judgment is granted on ECP's First Cause of Action for fraudulent conveyance against 35 Kermit Place and ECP is entitled to an award of reasonable attorneys' fees, pursuant to DCL § 276-a, the amount of which shall be determined after a hearing; and it is further

**ORDERED** that ECP's motion (mot. seq. eight) is granted to the extent that summary judgment is granted on ECP's Third Cause of Action for fraudulent conveyance against Defendants Smart Kids, Tameka Norton and Tamir Norton, on its Sixth Cause of Action for civil conspiracy against all Defendants and ECP is entitled to an award of reasonable attorneys' fees, pursuant to DCL § 276-a, the amount of which shall be determined after a hearing; and it is further

**ORDERED,** that the parties shall appear before a JHO/ SPECIAL REFEREE in Part 82 at a date and time to be determined who shall hear and report the amount of reasonable attorneys' fees to be awarded to ECP, pursuant to the attached referral order.

This constitutes the decision and order of the court.

E N T E R,

*Jay F. Companielli*

J. S. C.
